**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAYA WHITLEY | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 22-1217 |
| | ) | |
| v. | ) | District Judge Marilyn J. Horan |
| | ) | Magistrate Judge Maureen P. Kelly |
| SUPERINTENDENT OVERMYER; | ) | |
| THE ATTORNEY GENERAL OF THE | ) | Re: ECF No. 9 |
| STATE OF PENNSYLVANIA; *and* | ) | |
| DISTRICT ATTORNEY OF ALLEGHENY | ) | |
| COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition under
28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"),
ECF No. 9, be denied.  It is further recommended that a certificate of appealability be denied.

### II.    REPORT

Laya Whitley ("Petitioner") is a state prisoner currently incarcerated at the State
Correctional Institution at Cambridge Springs ("SCI-Cambridge Springs") in Cambridge Springs,
Pennsylvania.  Petitioner initiated this action on August 24, 2022, by filing the Petition, in which
she challenges her 2019 convictions in the Court of Common Pleas of Allegheny County,
Pennsylvania, for the following crimes:

- Third-degree murder, in violation of 18 Pa. C.S.A. § 2502(c);

- Robbery, in violation of 18 Pa. C.S.A. § 3701(a)(1)(i);

- Criminal conspiracy, in violation of 18 Pa. C.S.A. § 903(a)(2);

- Criminal use of a communication facility, in violation of 18 Pa. C.S.A. § 7512(a); and

- Tampering with or fabricating physical evidence, in violation of 18 Pa. C.S.A. § 4910(1).

See Docket, Com. v. Whitley, No. CP-02-CR-0004374-2018 (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-02-CR-0004374-2018&dnh=1xqSpG4Ka%2FmnJEAr5hxVyQ%3D%3D (last visited Aug. 20, 2025)). See also ECF No. 9 at 1.

### A. Factual Background and Procedural History

The Pennsylvania Superior Court summarized the relevant factual background of this case as follows.

> Whitley was charged with homicide and related offenses for her role in the murder and robbery of Keiauna Davis (Davis) on February 22, 2018. On that day, Davis and Whitley were co-workers at Dollar General. During the afternoon, Davis's grandmother came to the store to drop off Davis's $3,000 income tax return. When Whitley found out, she texted her co-defendant, Dane Taylor (Taylor), and told him that her co-worker Davis had a large amount of cash on her. This led to Taylor enlisting another co-defendant, Kaijin Scott (Scott), to drive him to the store and wait for Davis to leave.
>
> Later that afternoon, while Davis and Whitley smoked a cigarette in front of the store, Scott and Taylor were waiting behind the store in Scott's parked car. When Davis left, Whitley sent a text message to alert Scott and Taylor because they could not see the front of the store. As Davis walked down the street, Scott drove past her and parked alongside the road. Scott then got out and pretended he was having car trouble. Once Davis reached the car, Taylor rushed out in a ski mask and wrestled her to the ground. When she would not give up her purse, Taylor pulled out a handgun and shot her twice. Taylor then took the purse, ran back to the car and fled with Scott. Davis was pronounced dead at the hospital, having suffered a contact wound to her hip that lacerated her right iliac artery. Whitley, meanwhile, received her portion of the robbery proceeds later that night after Scott and Taylor spent theirs on clothes.
>
> On July 16, 2019, Whitley entered into a negotiated plea agreement in which she agreed to plead to third-degree murder, robbery, conspiracy, criminal use of communication facility and tampering, and was sentenced that same day to serve 20 to 50 years' imprisonment. Taylor reached a similar plea agreement for 30 to 60

years and went through his on-record colloquy at the same time as
Whitley. During the colloquy, Taylor's counsel stated that Taylor
was entering "with the caveat that there was no testimony to be
offered by Mr. Taylor against any of the other Co-Defendants..."
N.T., 7/16/19, at 18.[3] Whitley did not file post-sentence motions or
a direct appeal after sentencing.

[3] Scott later proceeded to a jury trial that ended with him being
found guilty of second-degree murder. He was sentenced to life
imprisonment in November 2021.

Com. v. Whitley, No. 850 WDA 2021, 2022 WL 439200, at *1 and n.3 (Pa. Super. Ct. Feb. 14,

2022) (internal footnote no. 2 omitted).

Because Petitioner did not file a direct appeal, her convictions became final on August 15,

2019.[1]  See Pa. R.A.P. 903.  See also Ellis v. Ricci, No. 09-5124, 2010 WL 1741593, at *1 (D.N.J.

Apr. 28, 2010) ("In cases where the defendant does not pursue a timely direct appeal, the sentence

becomes final, and the statute of limitations begins to run, on the date on which the time for filing

such an appeal expired.") (internal citations and quotation marks omitted).

---

[1] The trial court docket and the paper state court record indicate the Petitioner submitted *pro se*
correspondence to the Court of Common Pleas and the Superior Court indicating her desire to
withdraw her guilty plea and for the appointment of new counsel.  See Docket, Whitley, No. CP-
02-CR-4374-2018; see also untitled correspondence dated August 12, 2019, and timestamped
August 16, 2019.  While Petitioner was represented by counsel at the time, see ECF No. 19-2 at
35 (trial counsel's Motion to Withdraw dated Sept. 13, 2019), and there is no indication that
Petitioner met the 10-day deadline for post-sentencing motions set forth in Pa. R. Crim. P. 720, it
is unclear why this correspondence was not treated as either a notice of appeal or a *pro se* PCRA
petition.

Be that as it may, both of Petitioner's grounds for federal habeas relief sound in ineffective
assistance of trial counsel.  ECF No. 9 at 5 and 7.  Because such claims properly are raised in
PCRA proceedings under Pennsylvania law, any irregularities with respect to a lack of direct
appeal appear to be irrelevant to the resolution of the instant federal habeas proceeding.

Petitioner filed a timely *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, on or about March 25, 2020.[2]  ECF No. 19-3 at 1; Docket, Com. v. Whitley, No. CP-02-CR-4374-2018.

Counsel was appointed on June 8, 2020, Docket, Com. v. Whitley, No. CP-02-CR-4374-2018, who filed an amended PCRA petition on September 18, 2020.  ECF No. 19-3 at 20.  In the amended PCRA petition, Petitioner raised a single claim of ineffective assistance of counsel, as set forth below.

> The defendant's claim is that she did not make a knowing, intelligent and voluntary plea because she was falsely advised by Attorney Jones that if she did not accept the Commonwealth's plea offer, co-defendants Taylor and Scott would <u>both</u> testify against her. However, the factual reality was that although Scott was almost certainly going to testify against the defendant, there was <u>no reality</u> where Taylor would have testified against the defendant.
>
> Thus, the defendant's claim of ineffectiveness is essentially that she did <u>not</u> make a knowing, intelligent and voluntary plea because Attorney Jones gave her completely inaccurate information about who would testify against her if she went to trial. Consistent therewith, the defendant maintains that had she known that <u>only</u> Scott would be testifying against her, she would <u>not</u> have entered a plea and instead would have proceeded to trial.

Id. at 27 (paragraph numbers omitted, emphasis as in original).  Petitioner filed a supplement to the amended PCRA petition on December 15, 2020, but did not raise any additional bases for relief therein.  ECF No. 19-4 at 25.

The PCRA trial court held an evidentiary hearing on April 21, 2021, at which Petitioner, her former attorney at her plea hearing, Taylor's former attorney at the same plea hearing, and

---

[2] The state court docket indicates that the PCRA petition was filed on March 25, 2020.  However, Pennsylvania applies the so-called "prisoner mailbox rule" to *pro se* PCRA petitions.  <u>See, e.g.</u>, Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998).  Thus, the effective date of filing likely is earlier.  That said, whether the correct filing date is earlier than March 25, 2020, has no effect on the disposition of the current federal habeas Petition.

various other witnesses testified.  See PCRA Hr'g Tr. dated Apr. 20, 2021.  Taylor also appeared

briefly, represented by counsel, in order to assert his right under the Fifth Amendment not to

incriminate himself.  Id. at 35.  Shortly thereafter, on July 6, 2021, the PCRA trial court issued an

order denying PCRA relief.  ECF No. 19-4 at 30.

Petitioner filed a timely appeal to the Pennsylvania Superior Court on July 14, 2021.  ECF

No. 19-5 at 1.  She submitted a statement of errors on July 30, 2021, asserting the following issues

on appeal.

> The defendant now raises the following issue(s) in her appeal to the
> Superior Court: This Honorable Court erred in denying the
> Amended PCRA Petition by (1) finding and ruling that the
> defendant's claim that trial counsel misled her about the strength of
> the Commonwealth's case was without merit; (2) finding and ruling
> that trial counsel was not ineffective in the course of representing
> the defendant in the plea negotiations and the plea/sentencing
> proceeding; and (3) finding and ruling that the defendant had not
> proven that her guilty plea was not knowing, intelligent and
> voluntary due to ineffectiveness by her trial counsel.

Id. at 15-17.  The PCRA trial court responded on September 10, 2021 with a brief Statement in

Lieu of Opinion, relying on its Order dated July 6, 2021, denying PCRA relief.  Id. at 20.

On November 17, 2021, Petitioner's PCRA counsel filed an Application to Withdraw as

Counsel and Turner-Finley Letter Brief.  ECF No. 19-6 at 1.  In that Letter Brief, counsel reiterated

the same issues raised in the statement of errors, and conceded that they were "essentially a single

issue, stated multiple ways in order to be a thorough and comprehensive as possible."  Id. at 22

and n.7.  He also indicated that Petitioner wished to argue that counsel should have used her PCRA

proceeding "to somehow obtain a shorter sentence."  Id. at 22.

On November 19, 2021, the Superior Court ordered Petitioner's counsel to submit a

separate petition to withdraw as counsel, and to serve it on Petitioner, along with a letter advising

her of her rights to proceed *pro se* or with private counsel.  ECF No. 19-7 at 1-2.  Counsel did so

on the same date.  Id. at 3.  There is no indication in the record that Petitioner attempted to submit any additional briefing to the Superior Court, either *pro se* or through private counsel.  See Docket, Com. v. Whitley, No. 840 WDA 2021 (Pa. Super. Ct. filed July 14, 2021) (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=850%20WDA%202021&d nh=%2BwXRpqJY0vOnyTVkvp%2FfAQ%3D%3D (last visited Aug. 20, 2025)).

The Superior Court affirmed the denial of PCRA relief in a Memorandum issued on February 14, 2022.  Whitley, 2022 WL 439200, at *1.  Therein, the Superior Court recognized and addressed the "single claims of ineffective assistance of counsel by her plea counsel" raised in Petitioners' amended PCRA petition.  Id. at *3-4.  In the margin, the Superior Court also recognized Petitioner's purported assertion that PCRA counsel should have used the PCRA proceeding to negotiate a shorter sentence, and agreed that it was not cognizable.  Id. at *4 n.6.

Petitioner filed a timely *pro se* petition for allowance of appeal with the Pennsylvania Supreme Court on March 14, 2022.  ECF No. 19-10 at 1.  *Allocatur* was denied on July 5, 2022. Id. at 31.

This Court received the instant Petition seeking federal habeas relief on August 24, 2022. Based on the signature block, the Petition is presumed to have an effective filing date of August 18, 2022.  ECF No. 9 at 15.  This case briefly was administratively closed, but was reopened on September 29, 2022, after Petitioner paid the required filing fee.  ECF Nos. 7 and 8.

Respondents answered the Petition on January 2, 2023.  ECF No. 18.  Petitioner did not file a traverse, despite being provided a period of time to do so.  ECF No. 20.  See also LCvR 2254.E.

The Petition is ripe for consideration.

## B. Federal Habeas Claims

Petitioner's claims are organized into two ostensible grounds for federal habeas relief. However, these grounds are prolix and compound. As to the first ground, Petitioner states:

Ground One: Ineffective Assistance of Counsel[.]

> (a) Supporting facts[:] Counsel failed to explain parameters and complete details of plea, failed to interview witnesses, failed to discuss Appellant's version. Failed to present any mitigating evidence. Failed to investigate, plan, or present a defense. Failed to abide by client's wishes. Failed to discuss options[.]

ECF No. 9 at 5.

As to the second ground, Petitioner asserts:

Ground Two: Guilty plea made not knowingly or intelligently[.]

> (a) Supporting facts[:] Counsel coerced her into taking a plea. Failed to explain parameters of plea. Failed to discuss options. Failed to investigate or present mitigating evidence. Failed to present witnesses. Failed to inform Appellant of sentence range. Gave bad advice in violation of the 6th Amendment. Counsel breached his duty by pressuring Appellant into a guilty plea. Failed to go to trial per Appellant's wishes.

Id. at 7.

## C. AEDPA Requirements

Before this Court addresses the merits of Petitioner's federal habeas claims, it will address whether the Petition fulfills the applicable procedural requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### 1. The AEDPA statute of limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations. In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254. The applicable portion of the statute is as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine

whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No. 99-5, 2004 WL 825858, at *3 (W.D. Pa. Mar. 10, 2004)).

In the instant case, Respondents concede that Petitioner's claims were timely filed. ECF No. 18 at 15. A review of the record, as set forth above, also supports this conclusion. As such, the Court finds that Petitioner's claims are timely.

## 2. Exhaustion and procedural default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.

To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To fairly present a claim, "[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts." Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1231 (3d Cir. 1992).

Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell,

387 F.3d 210, 234 (3d Cir. 2004). A petitioner shall not be deemed to have exhausted state remedies if she has the right to raise her claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987). In the case at bar, it is clear that Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available to her due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. In turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002). So too has the requirement under 42 Pa. C.S.A. § 9544(b) that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." Garcia v. Adams, No. 17-CV-5249, 2019

10

WL 8015127, at *6 (E.D. Pa. Aug. 27, 2019), <u>report and recommendation adopted</u>, 2020 WL 868200 (E.D. Pa. Feb. 20, 2020), <u>aff'd sub nom</u>. <u>Garcia v. Sup't Forest SCI</u>, No. 20-1570, 2022 WL 1153122 (3d Cir. Apr. 19, 2022) (citing cases). Additionally, waiver due to a petitioner's failure to recite a claim in a "statement of questions" section in her state court appeal brief has been held to be independent and adequate ground for procedural default <u>Stringer v. Folino</u>, No. 13-221, 2016 WL 836347, at *13-14 and n.16 (W.D. Pa. Feb. 1, 2016) (citing Pa. R.A.P 2116(a)), <u>report and recommendation adopted,</u> 2016 WL 826016 (W.D. Pa. Mar. 3, 2016).

Respondents argue that the grounds for federal habeas relief asserted in the Petition exceed the scope of what Petitioner had fairly presented to the courts of Pennsylvania. ECF No. 18 at 20-21. That scope was limited to whether Petitioner's trial counsel was ineffective because he falsely informed Petitioner that her co-defendant, Taylor, would testify against her at trial, which led to Petitioner entering a guilty plea that was not knowing, voluntary, and intelligent. <u>See</u> ECF No. 19-3 at 25; ECF No. 19-5 at 16-17; ECF No. 19-6 at 21-22; <u>Whitley</u>, 2022 WL 439200, at *1. As a result, any assertion in Grounds One and Two that exceeds that scope is procedurally defaulted. ECF No. 18 at 20-21.

Despite having been granted a period of time to respond to Respondents via a traverse, <u>see</u> ECF No. 20, Petitioner failed to do so.

Upon review of the record, it is clear that Respondents are correct. Only the portion of Grounds One and Two that fall within the scope of what was presented to the PCRA trial court and Superior Court, as outlined above, has been exhausted. Because Petitioner cannot now raise any additional claims in a PCRA petition in state court, any additional scope asserted in Grounds One and Two is procedurally defaulted.

The United States Supreme Court has held that where a petitioner has to failed to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same). The Supreme Court in Coleman further recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them." 501 U.S. at 750.

The Supreme Court has defined "cause" as "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. Id.

In order to show a fundamental miscarriage of justice, the United States Supreme Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 321 (quoting Murray, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S at 324. Once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

Here, Petitioner has not asserted the existence of any basis to set aside her default. There is no evidence on the record of cause, and Petitioner may not develop the record now even if she were to raise it. See 28 U.S.C. § 2254(e)(2). See also Shinn v. Ramirez, 596 U.S. 366, 371 and 382-83 (2022). Nor does Petitioner allege the existence of the type of evidence necessary to satisfy Schlup.

Therefore, Petitioner has not met her burden to set aside her procedural default. Accordingly, any portion of Grounds One and Two that exceeds the scope of the claim that was presented to the PCRA trial court and Superior Court should be denied.

### D. Merits Analysis of Federal Habeas Claim

#### 1. Standard of review

Where the state court has reviewed a federal issue presented to it and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which a federal habeas court must review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in Section 2254(d). The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of . . . clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but

13

reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome by Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Lambert, 387 F.3d at 235-236. The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding." Id. at 236 n.19. If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those

findings under state law – unless they are rebutted by clear and convincing evidence.  See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  Ross v. Att'y Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008).  This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions.  Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied.  We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, No. 07-CV-00021, 2010 WL 3636164, at *10 n.20 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added).  Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

**2. Ineffective assistance of trial counsel**

Petitioner's grounds for federal habeas relief each sound in assertions of ineffective assistance of counsel.  See Part II.B, supra.  So too does the sole portion of them that was exhausted – that Petitioner's trial counsel was ineffective because he falsely informed Petitioner that her co-

defendant, Taylor, would testify against her at trial, resulting in a guilty plea that was not knowing, voluntary, and intelligent.  ECF No. 18 at 20-21; ECF No. 19-3 at 25.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).  The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense.  Strickland, 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."  Id. at 689.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  Id.  Instead, Petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal citation of quotes omitted).

The second prong of the Strickland test requires a petitioner to demonstrate that counsel's errors deprived her of a fair trial and the result was unfair or unreliable.  Strickland, 466 U.S. at 689.  To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome.  Id.

In order to establish prejudice in the context of a guilty plea, a petitioner must "show [that] the outcome of the plea process would have been different with competent advice."  Lafler v. Cooper, 566 U.S. 156, 163 (2012); see also Hill, 474 U.S. at 59 (requiring a petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").  A petitioner makes this showing by establishing not only that he or she would not have pleaded guilty and instead would have proceeded to trial if he or she had been properly advised, but also that "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Further, with regard to a challenge to a guilty plea in a federal habeas action, the United States Supreme Court has stated:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989).  See also Lesko v. Lehman, 925 F.2d 1527, 1537

(3d Cir. 1991).  The voluntariness of a plea can only be determined by considering all of the

relevant circumstances surrounding it.  Brady v. United States, 397 U.S. 742, 749 (1970).

In considering a claim of ineffectiveness of counsel, Pennsylvania uses a three-part

effectiveness test.

> To plead and prove ineffective assistance of counsel a petitioner
> must establish: "(1) that the underlying issue has arguable merit; (2)
> counsel's actions lacked an objective reasonable basis; and (3) actual
> prejudice resulted from counsel's act or failure to act."
> Commonwealth v. Stewart, 84 A.3d 701, 706 (Pa. Super. 2013) (*en
> banc*).  The failure to meet any of these aspects of the ineffectiveness
> test results in the claim failing. Id.

Future v. Ferguson, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), certificate

of appealability denied sub nom. Future v. Sup't Benner Twp. SCI, No. 22-2419, 2022 WL

18536146 (3d Cir. Dec. 6, 2022).  This test has been found by the Third Circuit not to be contrary

to Strickland.  Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).  Thus, the Superior Court's

decision – which applied this standard, see Whitley, 2022 WL 439200, at *3 – is not contrary to

Strickland.

The Superior Court addressed summarized the evidence presented at Petitioner's PCRA

hearing as follows.

> At the evidentiary hearing, the assistant district attorney who
> prosecuted the co-defendants testified there was never any real
> discussions about Taylor being a witness if Whitley went to trial,
> stating, it "wasn't something that we took affirmative steps toward."
> N.T., 4/20/21, at 15. Taylor's counsel similarly testified that there
> were no real discussions with the Commonwealth about his client
> testifying. *Id.* at 53.
>
> Whitley's claim then hinged on whether plea counsel told her that
> Taylor was going to testify against her if she went to trial. When
> asked whether he told Whitley that Taylor would be a witness
> against her, plea counsel responded as follows:

> I know that's kind of the crux of a lot of this, but I
> just can't recall like that. I know I would have said –
> generally speaking, what I say to all of my clients in
> homicides, is that the shooter is usually the one
> person that the Commonwealth will not make a deal
> with. But I just can't recall specifically on this case
> about Mr. Taylor.

*Id.* at 42. Plea counsel added that he would not have embellished or
overstated the strengths of the Commonwealth's case—including
who would testify—to convince a client to plead guilty. *Id.* at 45.

Whitley, meanwhile, presented several family members who were
with her on the day of the plea. First, her father testified that he was
present when plea counsel told her that Taylor was willing to testify
against her and was "begging and pleading for a plea bargain so he
can testify against [Whitley]." *Id.* at 19-20. Her mother testified that
plea counsel had the family write a note urging Whitley to "take the
plea because the shooter was going to testify against her." *Id.* at 25.
Whitley's grandmother also testified that plea counsel told Whitely
she should take the plea because "the defendants were going to
testify against her." *Id.* at 28.

Finally, Whitley testified that she pleaded guilty because plea
counsel told her that Taylor would testify against her if she went to
trial. *Id.* at 60. She explained:

> He came to the jail and told me that there was a plea
> offer for 20 to 50 years, and I told him no, because I
> was innocent. And the[n] he told me that it didn't
> matter if I was innocent or not because [Taylor] was
> going to testify against me and I would receive a life
> sentence. ...

*Id.* at 60-61. She ultimately decided to enter the guilty plea,
testifying she did so because plea counsel told her again that both
Scott and Taylor were going to testify against her if she decided to
go to trial. *Id.* at 61.

On cross-examination, the Commonwealth asked Whitley about
Taylor's counsel stating on the record that his client's plea was not
contingent on his agreement to testify against any co-defendants.
Failing to see the significance of the question, Whitley responded
that the statement came after she had already signed the written plea
colloquy. *Id.* at 64-65. When pressed about why she continued with
the plea and admitted to her guilt despite now claiming that she was
innocent, Whitely responded she was "overwhelmed." *Id.* at 67.

On July 6, 2021, the PCRA court issued its order denying Whitley's claim of ineffective assistance of counsel. In its findings of fact, the PCRA court stated that "it was made abundantly clear during the plea colloquy and prior to [Whitley] entering her plea, that Dane Taylor was not going to testify against any co-defendant, including [Whitley]." PCRA Court Opinion (PCO), 7/6/21, at 4. Even if plea counsel misadvised Whitley about Taylor testifying, "at the time she entered her plea any notion that he would testify was dispelled." *Id.* The PCRA court went on to find Whitley's explanation that she was too overwhelmed to discontinue the plea not credible. *Id.* Additionally, the PCRA court credited plea counsel's testimony that, while he could not specifically recall his advice to Whitley, he would not have embellished the Commonwealth's case to facilitate a plea. *Id.* at 5. Instead, the PCRA court found plea counsel's actions were reasonable in seeking a plea agreement for a reduced period of incarceration "in the face of overwhelming evidence" against Whitley. *Id.*

Id. at *2 (emphasis in original, internal footnote omitted).

The Superior Court went on to analyze the merits of Petitioner's claim.

After review, we agree with counsel that Whitley's claim of plea counsel's ineffectiveness lacks merit. First, as to Whitley's claim that she pleaded guilty only because she thought that Taylor was going to testify against her, the PCRA court pointed out, her on-record colloquy was done in conjunction with Taylor's. During their colloquies, Taylor's counsel stated on the record that Taylor was entering into his plea agreement "with the caveat that there was no testimony to be offered by Mr. Taylor against any of the Co-Defendants..." N.T., 7/16/19, at 18. After Taylor's counsel stated this, Whitley proceeded with her on-record colloquy and voiced neither confusion nor apprehension about pleading guilty as she admitted to her role in the homicide.

As a result, any claim that Whitley entered her guilty plea under the belief that Taylor would be a witness against her are belied by the record. She cannot now claim that she was coerced to plead guilty when she failed to voice any concerns at the time of the plea. *See Commonwealth v. Muhammad*, 794 A.2d 378, 384 (Pa. Super. 2002) (citing *Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Super. 1996)); *see also Commonwealth v. Kpou*, 153 A.3d 1020, 1024 (Pa. Super. 2016) (citing *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003)) ("A person who elects to plead guilty is bound by the statement he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.").

As to the PCRA court's decision to credit plea counsel's testimony over that of Whitley and her family members, the PCRA court explained its credibility determination as follows:

> ...Despite [plea counsel's] inability to recollect having a conversation with [Whitley] regarding the potential testimony of Dane Taylor, the Court believed [plea counsel's] testimony that he would not have embellished the strength of the Commonwealth's case to facilitate a plea. [Plea counsel] displayed a knowledge of the case and took action in the face of the overwhelming evidence that he deemed were in the best interests of his client, which in this case was an effort to secure a reduced period of incarceration.

PCO at 5.

As discussed, Whitley's ineffectiveness claim hinged on proving that plea counsel told her that Taylor would testify against her if she went to trial. To support this claim, Whitley and her family members testified that he did. The PCRA court, however, listened to their testimony and did not believe them, choosing instead to credit plea counsel's testimony that he would not have stated that a witness was going to testify simply to get a client to plead guilty. Because the PCRA court's credibility determination was supported by the record evidence, we are bound by that determination and must conclude that Whitley could not establish that her counsel told her that Taylor was going to testify against her. *See Commonwealth v. Widgins*, 29 A.3d 816, 819-20 (Pa. Super. 2011) (finding PCRA claim lacked merit where the PCRA court's credibility determination was supported by the record).

Id. at *4 (emphasis in original).

Based on the substance of the Superior Court's analysis, as set forth above, this Court interprets the Superior Court's determination to rest on both the effective performance prong and the prejudice prong of Strickland.

Upon a thorough review of the record, including the transcript of Petitioner's guilty plea hearing, and the transcript of her PCRA evidentiary hearing, this Court concludes that Petitioner

has failed to establish that the Superior Court's denial of relief was contrary to, or an unreasonable application of Strickland, or was based on an unreasonable determination of the facts.

As the PCRA trial court and the Superior Court both recognized, the transcript of Petitioner's guilty plea hearing clearly shows that Taylor's plea would be entered "with the caveat that there was no testimony to be offered by Mr. Taylor against any of the other Co-Defendants[.]" Guilty Plea/Sentencing Hr'g Tr. dated July 16, 2019, at 18. This was recited on the record well prior to Petitioner entering her plea of guilty. Id. at 34.

Further, while the decision to deny PCRA relief rests, at least in part, on credibility determinations – i.e. trial counsel's testimony that he would not have embellished the strength of the prosecution's case versus Petitioner and her family's testimony that trial counsel falsely told them that Taylor would testify against Petitioner – Petitioner has failed to overcome the presumption that those determinations are correct by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner has failed on both prongs of the Strickland test to prove ineffective assistance of counsel. Therefore, federal habeas relief should be denied.

**E. Certificate of Appealability**

A certificate of appealability should be denied, as jurists of reason would not debate that Petitioner has failed to show entitlement to relief. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

**III. CONCLUSION**

For the reasons that follow, it is respectfully recommended that the Petition, ECF No. 9, be denied. It is further recommended that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: August 20 , 2025

Respectfully submitted,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Marilyn J. Horan
       United States District Judge


       Laya Whitley
       PC5545
       SCI Cambridge Springs
       451 Fullerton Ave
       Cambridge Springs, PA 16403-1238


       All counsel of record (*via* CM/ECF)